UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL RODRIGUEZ-ARANGO,

                    Petitioner,                    Case Number 12-11973
                                                   Honorable David M. Lawson

v.

THOMAS WINN,

                    Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

An Ingham County, Michigan jury convicted petitioner Michael Rodriguez-Arango of sexually assaulting a twelve year-old boy who had recently emigrated with his family from Cuba. After he was sentenced to lengthy prison terms and his convictions were affirmed by the state appellate courts, and his post-conviction motion was denied, the petitioner filed *pro se* the present petition for a writ of habeas corpus under 28 U.S.C. § 2254. He raises a variety of claims dealing with the quality of his legal representation, the prosecutor's conduct, the questioning of the victim, an amendment to a charge, sentencing, and the trial court's jurisdiction. Because the state court's rejection of these claims did not contravene or unreasonably apply federal law, the Court will deny the petition.

I.

The petitioner was charged with five counts of first-degree criminal sexual conduct and one count of second-degree criminal sexual conduct. His trial took place in October 2009. The petitioner's defense was that the victim's father coerced him into fabricating the charges.

During jury selection, the subjects of homosexuality and pedophilia were raised, and the prospective jurors were asked whether their views on these subjects would affect their ability to be impartial.  Defense counsel questioned prospective jurors about their views on homosexuality in general and whether they believed there was a relationship between homosexuality and pedophilia. During this line of questioning, counsel characterized the charges as having a "yuck nature" and with being "creepy."  The questioning generally elicited responses from jurors either that they did not have a negative view of homosexuality or that they would put aside any negative views in deciding the case.

One prospective juror stated that she would be uncomfortable with a child witness having to testify at trial because her granddaughter had been involved "in something like that," and she would have difficulty separating her personal experience with the evidence.  It appears from the record that this juror expressed reluctance to serving on the case.  Another prospective juror stated, "[A]s a [C]hristian I don't believe in homosexuality, but I can set it aside as far as the case goes." Both jurors were seated on the jury.  Defense counsel did not use any of his peremptory challenges, and he did not attempt to strike any members of the jury venire for cause.

At trial, Juan Carretero-Membrado, the victim's father, testified that he moved to the United States from Cuba with his family in 2006.  The petitioner, who lived in the same apartment building with his boyfriend, Alberto, developed a friendship with the family shortly after their arrival.  The petitioner worked at the same factory as Carretero-Membrado's wife, Ozune, and the two occasionally shopped together.

Carretero-Membrado testified that he noticed that the petitioner started paying more attention to his son JC-M when visiting their home.  He testified that the petitioner gave JC-M gifts and had

-2-

physical contact with him such as hugging, touching, and wrestling. The increase in physical contact over time made Carrero-Membrado feel uncomfortable, and at some point he banned the petitioner from his apartment.

One day in the Summer of 2007, Carretero-Membrado came home early from work and heard people running inside the apartment. He found JC-M in his bed, and he appeared to be scared. Carretero-Membrado asked JC-M what was going on, and JC-M responded, "nothing." Carretero-Membrado then looked in the kitchen and found the petitioner hiding. When he confronted him about why he was there, the petitioner said he came to visit the children to see if they were okay. After hearing additional information from JC-M's sister, mother, and grandmother, Carretero-Membrano eventually called the police.

The petitioner elicited testimony on cross-examination that Carretero-Membrado became jealous of the petitioner's relationship with Ozune. He denied hitting his wife or his children, but he admitted to having a physical altercation with his wife. Carretero-Membrado told the petitioner's partner that he believed the petitioner was having an affair with his wife.

JC-M testified that after he moved to the United States, the petitioner visited his apartment with his boyfriend, Alberto. Eventually the petitioner began to visit him alone. JC-M testified that the petitioner typically would come over in the morning when his parents were at work. The petitioner told JC-M in advance when he would be coming, and JC-M would skip school.

JC-M recounted a particular day in the Summer of 2007 when the petitioner came to his apartment and drove him to a park in Lansing. He testified that when they reached the park, he and the petitioner climbed into the back seat of the vehicle. They both removed their clothing. The petitioner masturbated JC-M. Then JC-M described the two performing oral penetration on each

-3-

other, and the petitioner sodomizing him. The petitioner also had JC-M masturbate the petitioner's penis.

JC-M testified that before that day, he and the petitioner had engaged in various sexual acts at his apartment. JC-M stated that the petitioner previously had touched JC-M's penis over his clothing, the petitioner had performed oral sex on JC-M, the petitioner had JC-M perform oral sex on him, the petitioner had penetrated JC-M's anus with his penis, and JC-M had penetrated the petitioner's anus with his penis. JC-M told the petitioner that he was okay with their touching each other. JC-M testified that occasionally they would perform sex acts on each other while his sister was sleeping. The sexual relationship lasted almost a year.

JC-M confirmed the incident when his father came home early one day and found the petitioner in their apartment.

JC-M testified he shaved his pubic hair because the petitioner had shaved his own. JC-M testified he did not tell his parents about his sexual relationship with the petitioner because he was afraid that the petitioner would be prosecuted.

JC-M's grandmother, Elsida Lusson-Membrado, testified that it appeared to her that the petitioner would make an effort to have physical contact with JC-M when they were together. She testified that the petitioner wrestled with JC-M, touched and hugged him, and grabbed his butt.

JC-M's sister testified that the petitioner came to their apartment when their parents were at work. On one occasion she saw the petitioner in JC-M's bedroom with him. She saw the petitioner kiss JC-M on the mouth and touch his penis and butt.

Officer John Cosme took the complaint from Carretero-Membrado on January 10, 2008. At the officer's behest, JC-M was immediately taken to the Sparrow Hospital for an examination.

-4-

Sexual assault nurse examiner Leann Holland examined JC-M the same day and found no physical injury to the genital area.  She did note a white linear mark on the perineum, and she noted faint bruises and scratches on various parts of his body.  She opined that the marks were not the result of physical abuse, and said that JC-M merely shrugged when she asked how he attained them. She also noticed that his genital area was shaven.

Dr. Stephen Guertin examined JC-M on September 4, 2008, and found that his physical condition was normal.  He said that JC-M reported experiencing painful defecation, which Guertin stated was consistent with "sodomization."  When asked about a photograph depicting JC-M's shaven pubic area, he opined that shaved pubic hair on a male of his age was unusual, and he stated that "[m]y only concern would be that the child is either homosexual or is being, is becoming homosexual in the sense of is turning that way."

The petitioner testified in his own defense.  He stated that he never touched JC-M.  He recalled that JC-M's father often drank a lot, and was sometimes angry and jealous.  JC-M's father once came to the petitioner's apartment and attempted to physically assault him.  The petitioner testified that both JC-M and his sister were nervous and afraid around their father.

The jury found the petitioner guilty of four counts of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b(1)(a), and one count of second-degree criminal sexual conduct. Mich. Comp. Laws § 750.520c(1)(a).  He was sentenced to four concurrent prison terms of 300 to 480 months and one term of 86 to 180 months.

The petitioner was sentenced, and then he filed a claim of appeal in the Michigan Court of Appeals, raising the following claims:

-5-

I.      Trial defense counsel was constitutionally ineffective for polluting the trial with his personal distaste for his client's sexual orientation, and because of that prejudice, failing in numerous ways to advocate for and protect his client's rights at trial.

II.     The trial court deprived the petitioner of the right to present a defense when it precluded trial counsel from refreshing the complainant's memory concerning messages he sent the petitioner describing his father's abuse; and trial counsel rendered ineffective assistance when he inexplicably abandoned the issue.

III.    Prosecutorial misconduct denied the petitioner a fair trial, and defense counsel was ineffective to the extent that he failed to object.

On May 6, 2011, the Michigan Court of Appeals issued an order remanding the case to the trial court for an evidentiary hearing on the petitioner's ineffective assistance of counsel claim. At the hearing, the petitioner's trial attorney testified that during jury selection, he wanted to uncover the prospective jurors' prejudices and educate them about the facts of the case. Defense counsel explained that he did not strike the first juror because a recent course he attended suggested a theory of not striking any jurors, and because when he and his client looked at the juror, she gave them a comforting look. Counsel also explained that he did not strike the juror because, despite his views on homosexuality, he was trying to get the jurors to come together and give a fair and impartial decision despite their prejudices. Defense counsel testified that he abandoned the effort to refresh the victim's memory with the text message because the trial court ruled against him. The trial court found that the petitioner was not denied the effective assistance of counsel and denied the motion for a new trial.

After post-remand briefing, the Michigan Court of Appeals affirmed the petitioner's convictions. *People v. Rodriguez-Arango*, No. 297065, 2011 WL 4467680 (Mich. Ct. App. Sept.

27, 2011). The Michigan Supreme Court denied leave to appeal. *People v. Rodriguez-Arango*, 491

Mich. 887 (2011).

      After the petitioner filed the present petition for habeas corpus, the Court granted his motion

to hold the case in abeyance so he could return to the state courts and exhaust additional claims. His

state court motion for relief from judgment raised the following claims:

> I.      There was ineffective assistance of counsel in the plea negotiation process
> and said ineffective assistance of trial counsel caused the petitioner to receive
> a much harsher sentence.

> II.    There was a state and federal due process violation when the petitioner herein
> during the trial stage of this case was given added charges [the charges were
> amended and the amended information mandated a minimum sentence of
> twenty-five (25) years] and not given the opportunity to have a preliminary
> examination relative to the new charges and [regardless] of the preliminary
> examination the petitioner was prejudiced by the amendment that did not cure
> any defect in the charge or to cure a time line — in fact there was no specific
> time ever alleged as to when these multiple charges were to have occurred or
> taken place therefore inadequate notice of the alleged crime.

> III.   The petitioner was resentenced by the trial court when the Michigan
> Department of Corrections sent a letter to the trial court and the petitioner did
> not have an opportunity to be present or to present his side of the argument
> relative to reasons that the trial court should no[t] have resentenced the
> petitioner. This violates the standard set forth in *People v. Holder*, 483 Mich.
> 168 (2009).

      The trial court denied the motion, and the state appellate courts denied leave to appeal.

*People v. Rodriguez-Arango*, No. 317961 (Mich. Ct. App. Mar. 14, 2014); *People v.*

*Rodriguez-Arango*, 854 N.W.2d 732 (Mich. 2014).

      The petitioner then filed an amended petition for writ of habeas corpus. The original petition

contained the following claims:

> I.      Trial defense counsel was constitutionally ineffective for polluting the trial
> with his personal distaste for his client's sexual orientation, and because of

-7-

that prejudice, failing in numerous ways to advocate for and protect his client's rights at trial.

II.     The trial court deprived the petitioner of the right to present a defense when it precluded trial counsel from refreshing the complainant's memory concerning messages he sent the petitioner describing his father's abuse; and trial counsel rendered ineffective assistance when he inexplicably abandoned the issue.

III.    Prosecutorial misconduct denied the petitioner a fair trial, and defense counsel was ineffective to the extent that he failed to object.

Pet. at 5-7. The respondent argues that these claims are no longer in play, because the petitioner filed an amended petition, which superseded the original, and the initial claims were not included in the amendment. It is true that an amended petition for a writ of habeas corpus "supersedes" an earlier-filed petition "for all purposes." *Calhoun v. Bergh*, 769 F.3d 409, 410 (6th Cir. 2014) (quoting *In re Refrigerant Compressors Antitrust Litigation*, 731 F.3d 586, 589 (6th Cir. 2013). However, "*pro se* complaint[s are] . . . h[e]ld to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). It appears that the petitioner intended his "amended" petition to be in actuality a "supplemental" petition. The latter does not supersede — or replace — the original petition; instead, it "deal[s] with events subsequent to the pleading to be altered and represent[s] additions to or continuations of the earlier pleadings." Charles Alan Wright, Arthur Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 1504 (3d ed. 1998). Because "'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers,'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97 (1976)), penalizing the petitioner for his inaccurate nomenclature would be imprudent. Therefore, the Court will address the claims in both petitions.

In his "amended" petition, the petitioner raised the following claims:

-8-

I.     Whether there was ineffective assistance of counsel in the plea negotiation process and said ineffective assistance of trial counsel caused the appellant to receive a much harsher sentence.

II.    Whether there was a state and federal due process violation when the defendant/appellant herein during the trial stage of this case was given added charges (the charges were amended and the amended information mandated a minimum sentence of twenty-five (25) years) and not given the opportunity to have a preliminary examination relative to the new charges and irregardless of the preliminary examination the defendant was prejudiced by the amendment that did not cure any defect in the charge or to cure a time line — in fact there was no specific time ever alleged as to when these multiple charges were to have occurred or taken place therefore inadequate notice of the alleged crime.

III.   Whether defendant was resentenced by the trial court when the Michigan Department of Corrections sent a letter to the trial court and the defendant/appellant did not have an opportunity to present his side of the argument relative to the reasons that the trial court should not have resentenced the defendant.  This violates the standard set forth in *People v. Holder*, 483 Mich 168; 767 N.W.2d 423 (Mich 2009).

IV.    Whether Defendant's state const. 1963, Art 1 Subsection 17 and U.S. Const. Amend XIV safeguards were violated when trial court acquired jurisdiction without the necessary statutory certification.

Amend. Pet. at viii-ix.  The warden filed a response arguing that the claims "are untimely, procedurally defaulted, not cognizable, and without merit."  Resp. at 10.

The "procedural default" argument is a reference to the rule that the petitioner did not preserve properly some of his claims in state court, and the state court's ruling on that basis is an adequate and independent ground for the denial of relief.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  The untimeliness argument references the requirement that a habeas petitioner must bring his claims within one year of the date his conviction becomes final.  *See* 28 U.S.C. 2244(d)(1).  The Court finds it unnecessary to address these procedural questions.  They are not a jurisdictional bar to review of the merits, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005) (procedural default);

-9-

*Smith v. State of Ohio Dept. of Rehabilitation*, 463 F. 3d 426, 429, n.2 (6th Cir. 2006) (statute of limitations), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). These procedural defenses will not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

## II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). Because Rodriguez-Arango filed his petition after the AEDPA's effective date, its standard of review applies. Under that statute, if a claim was adjudicated on the merits in state court, a federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, --- U.S. ---, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks and citations omitted)); *see also Dewald v. Wriggelsworth*, 748 F.3d 295, 298-99 (6th Cir. 2014); *Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

## A.

The petitioner's first claim asserts that his counsel rendered constitutionally ineffective assistance at trial because, as evidenced by his comments during jury selection, trial counsel was homophobic and his prejudice caused him to be unable to subject the prosecutor's case to meaningful adversarial testing. The petitioner asserts that his counsel failed to exercise peremptory challenges

to jurors that expressed bias against homosexuals.  He also asserts that his counsel should have objected to the testimony of Dr. Guertin regarding the significance of the victim's shaven pubic hair.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, (1984), governs the Court's analysis of ineffective assistance of counsel claims.  *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).  To establish a claim of ineffective assistance of counsel, a defendant must show both deficient performance and prejudice.  *Premo v. Moore*, 562 U.S. 115, 121 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).

The petitioner first asserts that his counsel found his homosexual lifestyle so distasteful that it prevented him from subjecting the prosecutor's case to meaningful adversarial testing.  The trial court rejected that claim and the court of appeals affirmed.  The appellate court determined that the petitioner's contention simply was not supported by the record, explaining that "[d]efense counsel's 'creepy' and 'yuck' references were made about the idea of gay men preying on children, and not about homosexuality in general, as defendant suggests."  *People v. Rodriguez-Arango*, 2011 WL 4467680, at *1.  That court also could not "find fault with the trial court's finding that defense counsel's statements during voir dire regarding homosexuality and pedophilia were made to elicit information from prospective jurors to assess their ability to make impartial decisions in a case that involved controversial and sensitive issues."  *Ibid.*  The court, accordingly, rejected the argument that counsel's performance was deficient under the *Strickland* standard.  *Ibid.*

The Supreme Court has determined that "[s]urmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).  On habeas review, the petitioner's burden is even greater.  The Supreme Court explained in *Harrington v. Richter* that

-12-

Establishing that a state court's application of *Strickland* was unreasonable under §
2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d)
are both "highly deferential," *id.*, at 689; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7
(1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S.,
at 123. The *Strickland* standard is a general one, so the range of reasonable
applications is substantial. *Ibid.* Federal habeas courts must guard against the danger
of equating unreasonableness under *Strickland* with unreasonableness under §
2254(d). When § 2254(d) applies, the question is not whether counsel's actions were
reasonable. The question is whether there is any reasonable argument that counsel
satisfied *Strickland*'s deferential standard.

*Richter*, 562 U.S. at 105.

In other words, on habeas review, "[t]he question 'is not whether a federal court believes the

state court's determination' under the *Strickland* standard 'was incorrect but whether that

determination was unreasonable — a substantially higher threshold.'" *Knowles*, 556 U.S. at 123

(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Moreover, "because the *Strickland*

standard is a general standard, a state court has even more latitude to reasonably determine that a

defendant has not satisfied that standard." *Ibid.* (citing *Alvarado*, 541 U.S. at 664).

The state courts did not unreasonably apply *Strickland*. It is true that the petitioner's counsel

made a statement during jury selection that suggested he personally found homosexuality distasteful.

He confirmed this fact at the post-trial evidentiary hearing. Nevertheless, the petitioner has not

demonstrated that his lawyer's personal prejudice caused a constructive denial of counsel because

defense counsel actively represented the petitioner at his trial. Trial counsel participated in voir dire,

cross-examined the witnesses, asserted objections, presented a defense, and made opening and

closing arguments. The petitioner has not pointed to any part of the record that supports the idea that

trial counsel's performance was affected in any way by his personal dislike of homosexuality.

-13-

The petitioner argues that his counsel should have exercised peremptory challenges to jurors Aguilar and Amsler because both jurors expressed views bringing into question their ability to be impartial.  The Michigan Court of Appeals rejected that argument as well, stating that both jurors declared that they could render a verdict on the evidence, uninfluenced by their personal views on homosexuality, and defense counsel's questioning of them was valid trial strategy.  The court explained:

> At the [post-trial] hearing, defense counsel explained that his decision not to excuse the jurors was based on trial strategy.  Regarding the first juror, defense counsel stated that he did not excuse the juror because he had taken an advanced law school course that taught a theory that rather than excuse a potential juror, counsel could "try a different approach of convincing and maybe separating them out for other purposes."  In addition, defense counsel stated that he did not excuse this particular juror because the juror "gave a comforting look" when defense counsel and defendant looked at each other.  Regarding the second juror, defense counsel stated that he did not excuse him because he was trying to educate the jury about homosexuality and the need for jurors to separate their prejudices to render a fair and impartial decision.

*Rodriguez-Arango*, 2011 WL 4467680, at *2.  The court did not buy into defense counsel's theories of persuasion, but it did not find that counsel's performance was constitutionally deficient.

> While we do not agree with defense counsel's strategy in this regard, in light of defense counsel's explanations regarding his decision not to exclude the two jurors, we follow the general rule of declining to evaluate with hindsight trial counsel's decision regarding whether to excuse a juror because such a decision is a matter of trial strategy.  Moreover, because neither juror's statements during voir dire indicated an inability to set aside their personal opinions regarding homosexuality and reach a decision on a fair and impartial basis, defense counsel's failure to exclude them would not have altered the result of the proceedings.

*Ibid.*

That determination likewise reasonably applies *Strickland*.  Where an ineffective assistance of counsel claim is founded on a claim that counsel failed to reasonably exercise peremptory challenges, a petitioner must show that a juror was actually biased against him.  *See Hughes v.*

-14-

*United States*, 258 F.3d 453, 458 (6th Cir. 2001). The record shows that the first juror stated that she would have a hard time separating her personal experience with the evidence in the case because her granddaughter had been involved in a similar case. She responded affirmatively to a question that asked whether any juror was "completely unwilling" and "absolutely [did] not want to serve as a juror on this case." Nevertheless, later in the selection process, defense counsel questioned her further, and she indicated that she would not assume that the petitioner was guilty simply because he was homosexual. The second juror also stated that he could set his personal beliefs aside "as far as the case goes." The record reasonably supports the decision by the state appellate court that the petitioner failed to demonstrate that the jurors at issue were actually biased against him.

The petitioner next argues that his attorney failed to object to Dr. Guertin's testimony regarding the significance of the victim's shaven pubic hair. The Michigan Court of Appeals found that the testimony was irrelevant, even though defense counsel performed deficiently by failing to object. *Rodriguez-Arango*, 2011 WL 4467680, at *3. The court found, however, that the petitioner failed to demonstrate prejudice, because "[t]he specific points that defendant argues Guertin established with his testimony were previously established during the victim's testimony." *Ibid*. That determination was reasonable. The victim testified that he shaved his pubic hair because the petitioner shaved his own. Moreover, the victim testified that he willingly engaged in homosexual acts with the petitioner and did not inform his parents because he did not want the petitioner to get in trouble as a result of their relationship. That testimony more directly addressed the objectionable suggestion by Dr. Guerin and was far more incriminating. It was reasonable for the state appellate court to conclude that the failure to object to Dr. Guertin's testimony on this issue did not result in *Strickland* prejudice.

-15-

The petitioner's claims of ineffective assistance of counsel were reasonably rejected by the state court.

B.

The petitioner next argues that his right to present a defense was denied when the trial court did not permit him to refresh the recollection of the victim with messages he sent to the petitioner regarding an incident with his father.

During cross-examination of JC-M, defense counsel attempted to refresh his memory regarding messages he sent to the petitioner:

> Q. Do you remember texting or sending E-mail messages to Mr. Arango?
> A. Yes.
> Q. Do your remember discussing the fact that you were afraid of your father?
> A. Yes.
> Q. Do you remember having to blockade your room door so that he could not get in?
> A. No.
> Q. Do you remember your mother trying to keep him off of you and she broke her finger?
> A. No.
> Q. Would looking at the E-mail messages help refresh your memory?
> A. Yes
> Mr. O'Briant: Your Honor, may I present the E-mail messages to him to refresh his memory?
> The Court: You can use whatever you want.
> Ms. Bourck (prosecutor): You Honor, may I object?  I haven't even seen these.
> The Court: You haven't disclosed any of this to the Prosecution in discovery, Mr. O'Briant?
> Mr. O'Briant: No, Your Honor.
> The Court: Why not?
> Mr. O'Briant: I didn't know that we need them to, to refresh his memory.
> The Court: You didn't — but it's evidence, isn't it?
> Mr. O'Briant: It will not be admitted and we are only using it to refresh his memory.
> The Court: Well, first of all, what did he say when you asked.  He said he did not do that.  So it is not something that can be refreshed.  He said that he didn't do that.  And I don't see how you could refresh his memory on something that he said he didn't do.
> The Witness: And no, I didn't do it.

-16-

Q. You did not E-mail?
A. I wrote an E-mail.
Mr. O'Briant: Okay. Thank you, Your Honor. I'll move on then.

Trial Tr. at 322-323 (Oct. 20, 2009).

The court of appeals agreed that the trial court's refusal to allow the petitioner to refresh the victim's recollection was erroneous. But it found the error harmless, because "the victim had already testified that he told defendant that he was afraid of his father." *Rodriguez-Arango*, 2011 WL 4467680, at *3. The court reasoned that "the critical fact that defendant was attempting to elicit from the victim — that the victim was afraid of his father — had already been established to support defendant's theory that the victim complied with his father's instruction to fabricate the allegation of sexual assault out of fear of his father." *Ibid.* The court also found that because "[t]he jury was well aware of defendant's fabrication defense" through the victim's testimony, the petitioner was not deprived of that defense at trial. *Id.* at 4.

The Sixth Amendment provides an accused the right to "compulsory process for obtaining witnesses in his favor," U.S. Const. amend. VI, a crucial part of the Constitution's more basic guarantee of "a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984). As applied to the states by the Due Process Clause of the Fourteenth Amendment, the accused has the right at trial to present testimony that is "relevant," "material," and "vital to the defense." *Washington v. Texas*, 388 U.S. 14, 16 (1967); *see also Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (stating that "[w]hether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" (citations omitted)). It is one of the "minimum essentials of a fair trial."

-17-

*Chambers v. Mississippi*, 410 U.S. 284 (1973).  But although the right to present a defense is a fundamental tenet of due process, "a defendant's right to present evidence is not unlimited, but rather is subject to reasonable restrictions."  The exclusion of evidence is unconstitutional where it "infringe[s] upon a weighty interest of the accused."  *Ibid*. (citing *Rock v. Arkansas*, 483 U.S. 44, 58 (1987)).  A "weighty interest of the accused" is infringed where "the exclusion of evidence seriously undermined 'fundamental elements of the defendant's defense' against the crime charged."  *Miskel v. Karnes*, 397 F.3d 446, 455 (6th Cir. 2005)(quoting *United States v. Scheffer*, 523 U.S. 303, 315 (1998)).  Errors implicating a defendant's right to present a defense are subject to harmless-error analysis.  *See Fleming v. Metrish*, 556 F.3d 520, 536-37 (6th Cir. 2009).

On direct review, a constitutional trial error may be excused only if it "was harmless beyond a reasonable doubt."  *Chapman v. California*, 386 U.S. 18, 24 (1967).  On federal habeas review, a petitioner may obtain relief only if his asserted error had a "substantial and injurious effect" on the jury's verdict.  *Brecht v. Abrahamson*, 507 U.S. 619, 631(1993); *see also Ruelas v. Wolfenbarger*, 580 F.3d 403, 412 (6th Cir. 2009) ("*Brecht* is always the test, and there is no reason to ask both whether the state court 'unreasonably' applied *Chapman* under the AEDPA and, further, whether the constitutional error had a 'substantial and injurious' effect on the jury's verdict.").

The exclusion of the text messaging evidence did not cause the level of prejudice *Brecht* requires.  From the exchange quoted above, it appears that although JC-M may not have denied sending the messages, he did seem to refute the idea that the barricading incident occurred at all. After the trial court ruled that the messages could not be used to refresh his recollection, JC-M admitted that he sent the message, but he also stated "no, I didn't do it," apparently referencing the

-18-

underlying incident.  Therefore, even if the trial court had allowed defense counsel to continue the line of questioning, it appears that it would not have generated favorable testimony.

Moreover, as the state court noted, the petitioner was able to elicit other testimony to support his defense that the allegations were fabricated as a result of JC-M's fear of his father.  JC-M had already testified that he was afraid of his father.  The petitioner testified that JC-M's father had attempted to assault him and that JC-M and his sister appeared to be afraid of him.  At the post-trial evidentiary hearing, defense counsel testified that he did not have any additional evidence to present that the father forced JC-M to make the allegations.  Finally, the evidence presented against the petitioner was quite substantial.  JC-M's testimony describing the sexual assaults was vivid and compelling.  JC-M's sister testified that she personally witnessed sexual contact occurring in JC-M's bedroom, and JC-M's father and grandmother both described the petitioner's suspicious behavior with JC-M.  The trial court's stumble over the evidentiary ruling, cutting off the line of questioning, did not have a substantial and injurious impact on the trial.  The error was harmless and does not merit habeas relief.

## C.

The petitioner's third claim asserts that the prosecutor committed several acts of misconduct that rendered his trial fundamentally unfair.  He asserts that the prosecutor improperly appealed to the jury's civic duty to convict him, vouched for the credibility of his witnesses, and distorted the testimony of a witness.

The clearly established Federal law relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168 (1986).  *Parker v. Matthews*, --- U.S. ---, 132 S. Ct. 2148, 2153 (2012).  In *Darden*, the Supreme Court held

that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Ibid.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  In assessing the petitioner's claims under 28 U.S.C. § 2254, this Court must ask whether the Michigan Court of Appeal's decision denying the petitioner's prosecutorial misconduct claims "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Id.* at 2155 (quoting *Harrington*, 562 U.S. at 103).

1.

The petitioner argues that the prosecutor improperly used a "civic duty" argument during his closing argument.  Generally, a prosecutor cannot make statements "calculated to incite the passions and prejudices of the jurors."  *United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir. 1991).  It is improper, for instance, for a state prosecutor to urge the jury to convict based on a sense of civic obligation, to send a message, or vindicate a victim.  But the Sixth Circuit has held that, "[u]nless calculated to incite the passions and prejudices of the jurors, appeals to the jury to act as the community conscience are not per se impermissible."  *Byrd v. Collins*, 209 F. 3d at 539 (quoting *United States v. Solivan*, 937 F. 2d 1146, 1151 (6th Cir. 1991)).

The record shows that the prosecutor asked the jury "what chance a child would have" if the jury would not convict on the basis of the child's testimony alone.  The court of appeals did not view the argument as an appeal to civic obligations.  "The prosecutor merely argued that the jury should not acquit a defendant accused of sexually assaulting a child simply because the child was the only person to testify about the details of the sexual assault; the prosecutor emphasized that children in

-20-

such cases are often the only people who can testify to such details." *Rodriguez-Arango*, 2011 WL 4467680, at *4.

The Court agrees that the argument was not improper. The prosecutor merely was pointing out that the nature of such cases and that often times the only evidence about details of the sexual assault is through the child-victim's testimony. The prosecutor's "less than-pointed-remark" did not — and was not designed to — incite prejudice in a jury. *See Puertas v. Overton*, 168 F. App'x 689, 701 (6th Cir. 2006).

2.

The petitioner argues that the prosecutor vouched for the credibility of his witness by stating that JC-M told the truth on the witness stand. "Improper vouching occurs when a jury could reasonably believe that a prosecutor was indicating a personal belief in a witness' credibility." *Taylor v. United States*, 985 F.2d 844, 846 (6th Cir. 1993). Improper vouching also occurs when the prosecutor argues evidence not in the record, *United States v. Martinez*, 981 F.2d 867, 871 (6th Cir. 1992), or when the prosecutor supports the credibility of a witness by expressing a personal belief in the truthfulness of the witness's testimony, thereby placing any perceived prestige of the office of the prosecutor behind the witness, *see United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999). Generally, improper vouching involves either blunt comments, *United States v. Kerr*, 981 F.2d 1050, 1053 (9th Cir. 1992), or comments that imply that the prosecutor has special knowledge of facts not presented to the jury or of the credibility and truthfulness of witnesses and their testimony, *United States v. Carroll*, 26 F.3d 1380, 1388 (6th Cir. 1994).

During closing arguments, the prosecutor proclaimed that "[JC-M] was honest with you . . ." and "[JC-M] told you the truth . . . ." Trial Tr. at 416-417 (Oct. 22, 2009). The court of appeals

-21-

determined that the prosecutor based these statements on the evidence presented and the demeanor of the witness. That decision reasonably applied federal law. A prosecutor is free to argue that the jury should arrive at a particular conclusion based upon the record evidence. *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999). Here, the prosecutor noted that JC-M testified that he had a close relationship with the petitioner and was able to relate to him better than he did with his father. The prosecutor noted that JC-M appeared to be in pain when he testified. She reasoned that JC-M's relationship with the petitioner ought to have created a motive to lie in the petitioner's favor, and the choice to testify against him was painful.

Because the state court reasonably determined that the challenged statements did not imply special knowledge or personal belief, the petitioner is not entitled to issuance of the writ on this ground.

3.

The petitioner also argues that the prosecutor committed misconduct in her closing argument by distorting the testimony of Nurse Holland and Dr. Guertin. The prosecutor argued that JC-M's shaved pubic hair at age eleven was significant because it suggested the child was sexually active. She asserted that both experts believed that shaved pubic hair at that age was not common, and Dr. Guertin "told you that that's what that signified to him, that he has been sexualized, either that or he was being converted to be homosexual or was homosexual." Trial Tr. at 420-21 (Oct. 22, 2009).

The court of appeals held that the argument accurately portrayed the testimony of Nurse Holland, but it mischaracterized Dr. Guertin's testimony. But the court found no harm to come from the mischaracterization. That holding was not an unreasonable application of federal law.

-22-

The prosecutor's argument did not stray too far from the witnesses' testimony. Both witnesses indeed testified that shaved pubic hair at that young age was rare. And Dr. Guertin testified that the shaved pubic hair of a boy of that young age indicated to him "that the child is either homosexual or is being, is becoming homosexual in the sense of is turning that way." Trial Tr. at 370-371 (Oct. 20, 2009). The petitioner has not demonstrated that the state courts' findings that no miscarriage of justice occurred was an unreasonable application of federal law as determined by the Supreme Court.

### D.

Next, the petitioner asserts that his attorney was ineffective by failing to communicate a plea offer. He says that the prosecutor made a plea offer for him to plead guilty to one count of first-degree criminal sexual conduct, agreeing the other charges would be dismissed. He states that a hearing was held on August 9, 2009, outside his presence, and a plea offer was discussed at the hearing. The petitioner insists that he was never informed of the offer, and that if he had been informed he would have accepted it.

When a habeas petitioner contends that his lawyer's ineffectiveness caused him to reject a plea offer from the prosecution, he must show prejudice by establishing absent the bad (or embargoed) advice, there is a reasonable probability that he would have accepted the plea offer and the prosecution would not have withdrawn it in light of intervening circumstances. *Lafler v. Cooper*, --- U.S. ---, ---, 132 S.Ct. 1376, 1385 (2012). The petitioner also must show that the court would have accepted its terms, and that the conviction or sentence, or both, would have been less severe than the sentence that in fact was imposed. *Ibid.* When determining the remedy for ineffective assistance of counsel relating to defendant's rejection of a plea offer, a court may take account of a

-23-

defendant's earlier expressed willingness, or unwillingness, to accept responsibility for his or her actions. *Id.* at 1389.

The trial court rejected this claim on the merits in its opinion denying the petitioner's motion for relief from judgment. The court essentially found that the factual allegation that the petitioner was unaware of the plea offer was untrue. In fact, the court found that the petitioner was present when the offer was made and decided to stand trial rather than accept the offer.

The trial court noted that no hearing was held on August 9, 2009, which was a Sunday. Instead, the petitioner was present for a pretrial conference held on September 9, 2009. At that conference, the prosecutor stated that a plea bargain had been offered, but it had not been accepted. The trial court discussed a "Pretrial Statement" presented at the hearing that reflected that a plea offer was made calling for the petitioner to plead guilty to one count of first-degree criminal sexual conduct, and the other charges would be dismissed, but there would be no sentencing agreement. The court specifically found that the petitioner was made aware of that offer. Moreover, a plea hearing was scheduled for October 16, 2009, but the plea hearing was cancelled. Trial commenced the following Monday.

A federal habeas court must presume that the state court's factual determinations are correct. 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-361 (6th Cir. 1998). The petitioner here has presented the Court with nothing to demonstrate that the trial court's determination that he was advised of the plea bargain and rejected it was incorrect. Indeed, an interpreter was sworn-in at beginning of the September 9, 2009, hearing in which the plea bargain was discussed, strongly suggesting the petitioner was present. His claim therefore fails because it is without a factual basis.

-24-

E.

The petitioner's fifth claim asserts that his right to notice of the charges under the Due Process Clause of the Fourteenth Amendment were violated when the criminal information was amended to reflect that the charges of first-degree criminal sexual conduct carried a mandatory minimum sentence of twenty-five years and lifetime electronic monitoring. He asserts that he was prejudiced by the amendment because it occurred after the plea bargain had been offered and rejected.

The Sixth Amendment to the United States Constitution, applied to the states through Due Process Clause of the Fourteenth Amendment, guarantees a criminal defendant the right to be informed of the nature of the accusations against him. *Cole v. Arkansas*, 333 U.S. 196, 201 (1948); *In Re Oliver*, 333 U.S. 257, 273 (1948); *Lucas v. O'Dea*, 179 F. 3d 412, 417 (6th Cir. 1999). "The due process clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him to permit adequate preparation of his defense." *Olsen v. McFaul*, 843 F. 2d 918, 930 (6th Cir. 1988).

A complaint or indictment need not follow a prescribed formula, as long as it adequately informs the petitioner of the crime in sufficient detail to enable him to prepare a defense. An indictment "which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings." *Mira v. Marshall*, 806 F. 2d 636, 639 (6th Cir. 1986); *see also Dell v. Straub*, 194 F. Supp. 2d 629, 653-54 (E.D. Mich. 2002). An alleged defect in a state court information or indictment therefore does not offend the Constitution unless a habeas petitioner can establish that: (1) he did not receive adequate

-25-

notice of the charges; and (2) he was therefore denied the opportunity to defend himself against the charges. *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002).

The original criminal information charged the petitioner with five counts of first-degree criminal sexual conduct and one-count of second-degree criminal sexual conduct. It indicated that the first-degree charges carried a sentence of "life or any term of years." The amended charging document, filed on October 16, 2009, indicated that the first-degree charges called for a sentence of "life or any term of years; mandatory minimum of 25 years and lifetime electronic monitoring."

The original charging document gave the petitioner adequate notice of charges. In fact, the petitioner had a preliminary examination before the criminal information was filed, at which the victim testified, giving him a detailed account of the allegations made against him. The late amendment merely informed him of the mandatory minimum penalty. His contention that he would have accepted the prosecutor's plea offer had he known of the twenty-five-year mandatory minimum prison sentence is at odds with his claim that he was never informed of the plea offer at all. Moreover, the plea offer contained no sentencing agreement, and it certainly did not contain an agreement to sentence the petitioner to less than the mandatory minimum set by state law. If the petitioner was not amendable to agreeing to the twenty-five year mandatory minimum sentence as required by state law, then earlier knowledge of that fact would have made it less likely that he would have accepted the plea bargain, not more likely. The late amendment of the criminal information therefore did not deny the petitioner the right to fair notice of the charges, and it did not result in the loss of a plea bargain.

-26-

F.

The petitioner claims that his sentence was altered without any opportunity for him to object when the trial court filed an amended judgment that added a term of lifetime electronic monitoring.

The original judgment was entered on December 3, 2009.  On December 14, 2009, the trial court issued an amended judgment of sentence reflecting the requirement under Michigan law that a defendant convicted of first-degree criminal sexual conduct be subject to "Lifetime GPS Supervision."

The petitioner asserts that the amendment outside judicial proceedings resulted in a denial of due process.  That argument must fail, however, because there is no Supreme Court authority establishing a right to formal resentencing to correct an invalid sentence.  *See*, *e.g.*, *Onifer v. Tyszkiewicz*, 255 F.3d 313, 317-18 (6th Cir. 2001) (reversing grant of habeas relief on due process sentencing claim).  Moreover, the amended judgment of sentence was entered just days after the original sentence.  It cannot be said that the petitioner had any legitimate expectation in the finality of his original sentence that would trigger due process or fair trial concerns.  *See United States v. DiFrancesco*, 449 U.S. 117, 136-39 (1980) (holding that defendant "has no expectation of finality in his sentence until the appeal is concluded or the time to appeal has expired").

G.

The petitioner asserts that the state district court judge failed to certify the bind-over form to the state circuit court as required by state law, and therefore, the trial court never acquired jurisdiction to try him.  That argument, however, does not invoke a federal concern.  The "[d]etermination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary."  *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976).  It

-27-

is well-settled that a perceived violation of state law may not provide a basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). The Court may grant a writ of habeas corpus only on the ground that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A "state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction for purposes of federal habeas review." *Strunk v. Martin*, 27 F. App'x 473, 475 (6th Cir. 2001). Therefore, any state-law procedural defect in the filing of the charging documents that allegedly affected the jurisdiction of the state court to try him does not implicate the petitioner's federal constitutional rights.

III.

For the reasons stated, the Court finds that the petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  May 10, 2016

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 10, 2016.

s/Jennifer McCoy
JENNIFER McCOY

-28-